UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Criminal No. 01-0361 (PLF) |
| | ) | Civil Action No. 11-2077 (PLF) |
| KERRY NEWMAN, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

MEMORANDUM OPINION

Petitioner Kerry Newman asks the Court to vacate his 2001 guilty plea to a criminal information charging him with one count of wire fraud. Newman alleges that his attorney provided ineffective assistance of counsel by failing to inform him that his plea, to a near certainty, would cause him to be deported, in violation of the rule announced by the Supreme Court in Padilla v. Kentucky, 559 U.S. 356 (2010). The government argues that Newman's conviction must stand because it became final in 2001 and Padilla "does not have retroactive effect," as the Supreme Court recently held in Chaidez v. United States, 133 S. Ct. 1103, 1105 (2013). After careful consideration of the parties' papers, the record in this case, and the relevant case law, the Court reluctantly must deny the petition.[1]

---

[1] The papers reviewed in connection with the pending motions include the following: petitioner's petition for a writ of *coram nobis* to vacate and set aside plea and conviction ("Pet.") [Dkt. No. 38]; government's opposition to petition for writ of *coram nobis* ("Opp.") [Dkt No. 44]; petitioner's reply in support of his petition ("Reply") [Dkt. No. 45]; petitioner's supplemental brief ("Pet. Supp.") [Dkt. No. 53]; government's reply to petitioner's supplemental brief ("Gov. Supp.") [Dkt. No. 55]; the transcript of plea proceedings ("Plea Transcript") [Dkt. No. 38-2]; the transcript of sentencing proceedings ("Sentencing Transcript") [Dkt. No. 38-3]; and petitioner's affidavit in support of his petition ("Aff.") [Dkt. No. 38-4].

I.  BACKGROUND

On October 24, 2001, Kerry Newman pled guilty to a one count information charging him with wire fraud, in violation of 18 U.S.C. § 1343.  Mot. at 2.  Specifically, the government alleged that Newman participated in a scheme to purchase and "flip" homes at fraudulently inflated prices.  Id.; see generally Plea Transcript at 18-20.  Newman agreed to plead guilty and aid the government in prosecuting other participants in the housing scheme.  Mot. at 2-3.  Although Newman, a native Jamaican who had lived in the United States since he was nine years old, was a Lawful Permanent Resident of the United States, his attorney did not inform him prior to his plea of any potential immigration consequences of pleading guilty.  Aff. at 2.

Before accepting his plea, the Court, consistent with its standard practices, asked Newman where he was born.  When Newman responded "Jamaica, West Indies," the Court informed him that his guilty plea to a felony offense "could have the consequence of deportation or exclusion from admission to the United States or denial of naturalization under the laws of the United States."  Plea Transcript at 8-9.  Although the Court noted that it did not "know if that applie[d]" to his case, Newman stated that he still wanted to plead guilty.  Id. at 9.  Despite the Court's warning, Newman's attorney stood silent, failing to offer any advice regarding the risk of deportation or otherwise intervene.  Aff. at 2-3 (stating that the Court's warning was "the first time this was ever brought to my attention, and even then my attorney did not advise me to change my plea or offer any advice regarding my immigration status.").

After pleading guilty, Newman cooperated fully with the government, making 37 phone calls and arranging twelve in-person meetings with other participants in the scheme.  Aff. at 2; Sentencing Transcript at 7.  The Court sentenced Newman to four months' incarceration,

with a recommendation that that period of confinement be served in a halfway house, followed by a three-year period of supervised release with a condition that the first four months be served in home detention with electronic monitoring. Id. at 22-23; Judgment at 2-3 (Sept. 20, 2002) [Dkt. No. 19].

At the sentencing hearing, government counsel mistakenly represented to the Court that:

> [I]f a sentence were more than a year and a day there may be some INS implications. I have not talked with INS about this case but I know from past experience that when there is a sentence of more than a year and a day it puts it into a different level. I have no idea whether INS is interested in doing anything whatsoever in this case and I don't plan on calling them, but this would be something I suggest the Court take into consideration.

Sentencing Transcript at 8-9. Newman's counsel repeated the same misunderstanding:

> The problem is that he's caught betwixt and between. If the Court should sentence him to more than a year and a day, as I understand it, that will trigger, may trigger, some INS interest and possibly some difficulties. If the Court should sentence him to a sentence of less than a year, Mr. Newman will of course have to spend more time, if the Court gave him time, more time in jail. And we chatted about that and it's Mr. Newman's position that he would rather avoid any problems with INS because of his commitment to the family. His family. And his commitment to the family business.

Id. at 18. In accepting the government's recommended sentence, the Court relied on these misstatements, stating that it thought the sentence imposed was "beneficial to [Newman] with respect to the INS." Id. at 22.

In truth, however, the prosecutor, Newman's defense attorney, and the Court were all wrong. Newman's deportation was a virtual certainty. Wire fraud is a "crime involving moral turpitude" under 8 U.S.C. § 1182(a)(2)(A)(i)(I), rendering him inadmissible to the United States. See Doe v. Atty. Gen. of the United States, 659 F.3d 266, 270 n.2 (3d Cir. 2011) (noting that "fraud is universally recognized" as a crime involving moral turpitude); accord Jordan v. De

3

George, 341 U.S. 223, 232 (1951) (stating that "crimes in which fraud was an ingredient have always been regarded as involving moral turpitude.").

Newman served his sentence and was released in May 2003. Aff. at 4. In 2007 — on his fourth trip to Jamaica since his release — he was stopped at the border upon his return to the United States and charged as inadmissible by Immigration and Customs Enforcement. Id. After receiving advice from an immigration attorney that he had no defense to deportation because of his fraud conviction, Newman consented to deportation and returned to Jamaica, where he has resided since. Id. Following the Supreme Court's decision in Padilla v. Kentucky, 559 U.S. 356 (2010), Newman filed this petition for a writ of *coram nobis*, arguing that Padilla's holding applied retroactively to his 2001 guilty plea. Pet. at 6-8.[2] In 2012, the Supreme Court granted *certiorari* in Chaidez v. United States, which presented the question of whether Padilla applied retroactively. After the Supreme Court answered that question in the negative, the parties filed supplemental briefs.

## II.  LEGAL STANDARDS

### A.  *Writ of* Coram Nobis

A petition for a writ of *coram nobis* is a means to "challenge the validity of a conviction after the sentence was fully served." Mudd v. Caldera, 26 F. Supp. 2d 113, 123 (D.D.C. 1998) (citing United States v. Morgan, 346 U.S. 502 (1954)). *Coram nobis* is an

---

[2] The government does not contest that Newman has satisfied the first three requirements for *coram nobis* relief, and the Court agrees. *Coram nobis* is the only remedy available to Newman; the timing of the Padilla v. Kentucky decision is a valid reason for Newman's delay in attacking his conviction; and permanent exclusion from the United States unquestionably qualifies as an adverse consequence. The only remaining question, therefore, is whether Newman received ineffective assistance of counsel constituting an error "of the most fundamental character." United States v. Faison, 956 F. Supp. 2d 267, 269 (D.D.C. 2013) (quoting United States v. Hansen, 906 F. Supp. 688, 692-93 (D.D.C. 1995)).

"extraordinary" remedy, United States v. Denedo 556 U.S. 904, 911 (2009), and such relief is "rarely granted," Craven v. United States, 26 Fed. App'x 417, 419 (6th Cir. 2001). A petitioner seeking a writ of *coram nobis* must show that:

> (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.

United States v. Faison, 956 F. Supp. 2d 267, 269 (D.D.C. 2014) (quoting United States v. Hansen, 906 F. Supp. 688, 692-93 (D.D.C. 1995)). An error is fundamental if it is "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." Id. at 271 (quoting United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001)).

### B. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant carries the burden of demonstrating that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); accord United States v. Shabban, 612 F.3d 693, 697 (D.C. Cir. 2010). Regarding the first prong, the Supreme Court has emphasized that "judicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. at 689. As the Supreme Court held in Padilla, 559 U.S. at 374, however, this first prong is satisfied when an attorney fails to advise a defendant about the risk of deportation as a result of the pending charges.

As for the second, or "prejudice," prong of the Strickland test, the Supreme Court has explained that "[a]n error by counsel, even if professionally unreasonable, does not warrant

5

setting aside the judgment of a criminal proceeding, if the error had no effect on the judgment." Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland v. Washington, 466 U.S. at 691) (alteration in original) (internal quotation marks omitted). This second prong requires only a reasonable probability – that is "a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694. As the court of appeals recently clarified, "[t]he prejudice inquiry focuses on whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Solofa, 745 F.3d 1226, 1229 (D.C. Cir. 2014) (internal citations and quotation marks omitted). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." United States v. Wright, 2014 WL 3919619, at *5 (D.D.C. August 12, 2014) (quoting Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012)). In other words, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Lafler v. Cooper, 132 S. Ct. at 1384-85 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Because the movant must satisfy both prongs of the Strickland test in order to succeed, "there is no reason for a court deciding an ineffective assistance of counsel claim to . . . address both components of the inquiry if the defendant has made an insufficient showing on one." Strickland v. Washington, 466 U.S. at 697.

### III.  DISCUSSION

Newman identifies two deficiencies he alleges constitute ineffective assistance of counsel: (1) his counsel failed to provide any advice regarding the risk of deportation prior to his plea; and (2) his counsel affirmatively misadvised him regarding the risk of deportation after his

6

plea was entered, but before and during sentencing. Pet. at 1; Pet. Supp. at 3; Aff. at 3. The Court concludes that Newman cannot succeed on either claim.

The first alleged deficiency fails because, before Padilla, Newman's counsel was not required to affirmatively advise him before or at his plea of the possible immigration consequences of his plea, as Newman now concedes. See Pet. Supp. at 1. Padilla established that a failure to advise a defendant about the risk of deportation or other immigration consequences constitutes ineffective assistance of counsel. But the Supreme Court held in Chaidez v. United States, 133 S. Ct. at 1110-11, that Padilla "altered the law of most jurisdictions," broke "new ground," "impos[ed] a new obligation," "modified governing law," and thus established a "new rule;" it therefore is not retroactive. Newman's conviction was final years before Padilla was decided. He therefore cannot benefit from its rule. See Chaidez v. United States, 133 S. Ct. at 1107 (citing Teague v. Lane, 489 U.S. 288 (1989)) (an individual whose conviction has become final "may not benefit" from a new rule of constitutional law "in a habeas or similar proceeding").

The second alleged deficiency — that Newman's counsel affirmatively misadvised him regarding the risk of deportation at the time of sentencing — fails because the misrepresentations by Newman's attorney occurred after he already had pled guilty. Newman therefore cannot show that "the result of [his] proceeding would have been different" absent these post-plea misrepresentations. Strickland v. Washington, 466 U.S. at 694.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Newman's petition for a writ of *coram nobis* and dismiss these cases.  An Order consistent with this Memorandum Opinion shall issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  November 26, 2014